# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Robert E. Blackburn

Civil Case No.  04-cv-01384-REB-CBS

OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., et al,

     Plaintiffs,

v.

USIS COMMERCIAL SERVICES, INC., d/b/a DAC Services, an Oklahoma corporation,

     Defendant.

---

## ORDER DENYING MOTION FOR CLASS CERTIFICATION

---

**Blackburn, J.**

     This matter is before me on the **Plaintiffs' Revised Motion for Class Certification** [#48], filed May 12, 2005.  The defendant has filed a response, and the plaintiff has filed a reply.  I deny the motion.

## I.  PLAINTIFFS' CLAIMS

     The seven individual plaintiffs are truck drivers.  They allege that they "have been the subject of inaccurate consumer reports transmitted by carriers, without notice to them and without their permission, to USIS, followed by inaccurate consumer reports re-transmitted by USIS to other carriers." *First Amended Complaint*, ¶ 36.  Defendant USIS provides a reporting system that helps trucking companies to comply with a federal regulatory requirement that the companies perform background checks on drivers before hiring them.  Trucking companies submit employment history information about their drivers to USIS by filling out a Termination Record Form (TRF).  When a trucking company orders an employment history report on a particular driver, as part of

the background check required by federal regulation, USIS compiles the TRF

information it has received about that driver and produces a report called a DAC

Report.  This name refers to DAC Services, the name by which USIS formerly was

known.  At some points in the amended complaint and elsewhere, USIS is referred to

as DAC.  USIS designed the Termination Record Form, and created and maintains the

system it uses to purchase TRFs from trucking companies, maintain the information in

a database, and sell the information to trucking companies who are prospective

employers of truck drivers.

     The plaintiffs argue that TRFs and DAC Reports are subject to the requirements

of the Fair Credit Reporting Act (FCRA).  15 U.S.C. §§ 1681 - 1681x.  The plaintiffs

allege that USIS has violated various requirements of the FCRA in its use of TRFs and

DAC Reports.  The rights of individuals under the FCRA are privately enforceable.  15

U.S.C. § 1681p.   Under § 1681o, a consumer may recover actual damages, costs, and

attorney fees if the consumer proves that the defendant was negligent in failing to

comply with the requirements of the Act.  The plaintiffs also assert a claim for willful

noncompliance with the requirements of the FCRA.  Under § 1681n, a person who

willfully fails to comply with the FCRA is liable for actual damages or statutory damages

between 100 and 1,000 dollars, punitive damages, costs, and reasonable attorney fees.

For the purpose of the motion for class certification, the willful violation claim is

significant because this claim does not require that the plaintiffs prove actual damages.

     The plaintiffs' allegations against USIS fall into two general categories.  First, the

FCRA requires consumer reporting agencies to "follow reasonable procedures to

assure maximum possible accuracy of the information concerning the individual about

whom the [consumer report] relates."  15 U.S.C. § 1681e(b).  The plaintiffs allege that

TRFs and DAC reports routinely are inaccurate, and that USIS has failed to follow reasonable procedures to assure accuracy in these reports.  I will refer to this first category as the plaintiffs' accuracy claims.

Second, the FCRA requires a consumer reporting agency to obtain a consumer's authorization before procuring a consumer report for employment purposes, or causing a consumer report to be procured for such purposes.  15 U.S.C. § 1681b(b)(2).  This section also requires notice and disclosure to a consumer in these circumstances.  The plaintiffs allege that USIS does not comply with these requirements when is acquires TRFs and when it sells DAC Reports.  I will refer to this second category as the plaintiffs' notice and authorization claims.

The plaintiffs argue that four contentions that form the basis for their FCRA claims are suitable for class-wide resolution.  I summarize these contentions below.

1.  DAC Reports are inaccurate under the FCRA - The plaintiffs claim that certain statements in the TRFs are inaccurate.  They argue that the TRF requires trucking companies to describe their drivers by choosing statements from a pre-scripted list without the ability to explain or qualify the statements.  The plaintiff claims that its expert's analysis of these statements indicates that the challenged statements are statistically inaccurate.  They claim that "(n)one of the statements in the TRFs convey [sic] meaningful information about **any** driver's work record.  This allegation of systemic failure to generate accurate reports is suitable for resolution on a class-wide basis." Motion for class certification, p. 8.   The plaintiffs also argue that various terms used in the TRF form are vague, ambiguous, and overly general, and, thus, provide inaccurate descriptions of events and driver character.  Id.

2.  USIS failed to maximize the accuracy of its reporting system - Section 1681e requires a reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information concerning an individual about whom the report relates."  The plaintiffs claim USIS has failed to meet this requirement in its use of TRFs and DAC Reports, and that this "failure is manifest in the system that produces inaccurate consumer reports on professional truck drivers." *Motion for class certification*, p. 9.

3.  USIS acquires consumer reports without authorization - The plaintiffs claim that TRFs are consumer reports and that USIS solicits and receives TRFs from trucking companies without complying with the notice, authorization, and certification requirements of 15 U.S.C. § 1681b(b).  Under § 1681b(b)(2), a person may not procure a consumer report for employment purposes absent disclosure to the consumer and written authorization by the consumer.

4.  USIS fails to provide FCRA mandated notices - In their amended complaint, the plaintiffs allege that USIS sells consumer reports for employment purposes without complying with the notice and authorization requirements of § 1681b(b).  *Amended complaint*, ¶ 58.  In their motion for class certification, the plaintiffs describe this claim differently.  The plaintiffs assert in their motion that each receipt by USIS of a TRF containing inaccurate statements, and each sale by USIS of a DAC report containing an inaccurate statement, are adverse actions under the FCRA.  The plaintiffs allege that the FCRA requires that USIS provide them notice of such adverse action, and certain other information.  15 U.S.C. § 1681m.  The plaintiffs claim that USIS systematically fails to give proper FCRA notice to drivers when it receives or sells an employment history containing inaccurate information.

To establish their claim that USIS negligently failed to comply with the accuracy requirements of § 1681e(b), the plaintiffs must prove that 1) USIS failed to follow reasonable procedures to assure the accuracy of its reports; 2) the report in question was, in fact, inaccurate; 3) the plaintiff suffered an injury; and 4) the injury was caused by an inaccurate report by USIS.  *Cassara v. DAC Services*, 276 F.3d 1210, 1217 (10th Cir. 2002).  Similarly, the plaintiffs' notice and authorization claims require proof that 1) the required notice or authorization was inadequate; 2) the plaintiff was injured; and 3) that the injury was caused by the inadequate notice.   To establish that USIS willfully failed to comply with the FCRA the plaintiffs must show that USIS knowingly and intentionally failed to comply with the FCRA "in conscious disregard for the rights of others."  *Stevenson v. TRW, Inc.*, 987 F.2d 288, 294 - 295 (5th Cir. 1993) (citation omitted).   Under § 1681n, a plaintiff who has proven that the defendant wilfully failed to comply with the FCRA may recover statutory and punitive damages without proof of actual damages.

The plaintiffs seek certification of a class of plaintiffs

> consisting of all individuals who, since July 7, 1999, (a) have been the subject of a consumer report received by DAC (USIS), or (b) who have been the subject of a consumer report published by DAC containing either the statement "Eligible for Rehire. No." or any statement in the "Work Record" section of DAC's consumer reports.

*Motion for class certification*, p. 10.

## II.  REQUIREMENTS OF FED. R. CIV. P.  23(a)

The plaintiffs seek to have this case certified as a class action under FED. R. CIV. P. 23.  Under Rule 23, a class may be certified if several requirements are met.  Rule 23(a) includes the following requirements: 1) the class is so numerous that joinder of all members is impracticable; 2) there are questions of law or fact common to the class;

3) the claims or defenses of the representative parties are typical of those of the class; and 4) the representative parties adequately will protect the interests of the class.

Rule 23(a)(2) requires that the claims of members of a proposed class present "common questions of law or fact."  Complete identity of legal claims among class members is not required.  Rather, the provision requires that there be two or more issues whose resolution will affect all or a significant number of the members of the proposed class.  *See Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982).  Rule 23(a)(3) requires that the claims of a proposed class representative be typical of the claims of the class.  "The commonality and typicality requirements tend to merge," but both "serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are [sufficiently] interrelated . . . ."  *General Telephone Company of Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982).  The United States Court of Appeals for the Tenth Circuit has held that the typicality requirement is satisfied if there are common questions of law or fact.  *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982), *cert. denied*, 460 U.S. 1069 (1983); *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

If the requirements of Rule 23(a) are satisfied, then one of the alternative requirements outlined in Rule 23(b) also must be met.  Rule 23(b)(3) provides

> **(b) Class Actions Maintainable.**  An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
>
> \*   \*   \*   \*   \*
>
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The

matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Class certification is a matter committed to the discretion of the trial court.

*Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982).  A certified class may be altered, expanded, subdivided, or abandoned as the case develops.  *See, e.g., Daigle v. Shell Oil Co.*, 133 F.R.D. 600 (D. Colo. 1990); *Dubin v. Miller*, 132 F.R.D. 269, 270-75 (D. Colo. 1990).

## III.  ANALYSIS

The defendants do not dispute that the plaintiffs' proposed class satisfies the numerosity requirement of Rule 23(a)(1).  The plaintiffs say their proposed class includes about 1.1 million truck drivers.  However, the defendant argues that the plaintiffs' proposed class does not satisfy the requirements of commonality, typicality, and adequate representation, as provided in Rule 23(a)(2),(3), and (4).   The defendant's key argument is that the plaintiffs' claims do not satisfy Rule 23(b)(3), because some of the plaintiffs' key factual contentions are not suitable for class-wide determination.  I agree.

### Inaccuracy Claims

Again, to establish their claim based on the alleged inaccuracy of the TRFs and DAC Reports, the plaintiffs must show that USIS failed to follow reasonable procedures to assure the accuracy of these reports, and that the plaintiffs' TRFs or DAC Reports are inaccurate.  The defendant notes that plaintiff, Dale Stewart, testified that his DAC Report is accurate.  *Defendant's opposition brief*, Exhibit N (Stewart depo.), p. 59, lines

17 - 25. The work record section of Stewart's DAC Report indicates that his employers considered his work "satisfactory." *Id.*, pp. 67 - 68.  Stewart testified that he thinks he's "better than that," but that the word "satisfactory" in his DAC report is accurate. *Id.*, pp. 68.  Plaintiff, Steven Bussone, also testified that his DAC Report indicates that his work has been "satisfactory." *Defendant's opposition brief*, Exhibit L (Bussone depo.), pp. 18 - 19.  Although he did not testify specifically that this term was accurate, presumably Bussone would not contest the accuracy of this positive label.

Three of the named plaintiffs complain about an entry on their DAC Report, but admit that the event reported actually occurred.  The claims of these plaintiffs demonstrate how accuracy can present a somewhat complex question in the context of the plaintiffs' FCRA claims.  For example, plaintiff, Shane Paul, complains that his DAC Report contains the term "cargo loss."  He objects to the entry "cargo loss," but admits that he did suffer the loss of a small amount of cargo on a particular occasion. *Defendant's opposition brief*, Exhibit E (Paul depo.), pp. 28 - 31, 106.  Plaintiff Jeff Mathews' DAC report includes the entry "Company Terminal Without Notice." *Id.*, Exhibit R, 3rd consecutive page.  Mathews stated that he did quit under load and leave the equipment at the company terminal without notice. *Id.*, pp. 31 - 33.  The testimony of these plaintiffs indicates that there likely is substantial dispute about whether or not these particular entries are accurate or not.

The plaintiffs argue that the central question concerning their inaccuracy claim is whether TRFs and DAC reports routinely are inaccurate, and that USIS has failed to follow reasonable procedures to assure accuracy in these reports.  The testimony of some of the named plaintiffs belies the claim of routine inaccuracy.  This testimony does not demonstrate routine inaccuracy.  Rather, it demonstrates some instances of

accuracy, and varying degrees of arguable inaccuracy.  In light of this evidence, I cannot conclude that the plaintiffs' claim of routine inaccuracy predominates over the key questions of law and fact that affect the named plaintiffs' inaccuracy claims.

In addition to proving an inaccuracy, the plaintiffs also must show an injury caused by the inaccuracy.  Plaintiffs, Shane Paul, Steven Bussone, Dale Stewart, Walt Williams, Jeff Mathews, and Richard Sisemore, each have testified that they do not know of any loss they have suffered as a result of an inaccuracy in their DAC Report. Absent proof of harm caused by an inaccuracy, these plaintiffs cannot establish a negligence claim under § 1681o.

The evidence in the record concerning the named plaintiffs' claims clearly indicates that there are substantial and varying factual issues, and related legal issues, concerning each plaintiff's basis for claiming inaccuracy and harm.  In this landscape, I cannot conclude that the named plaintiffs' claims are common, typical, and suitable for class-wide determination.  Rather, each plaintiffs' claim is based on widely variable facts that have a substantial effect on the viability of each plaintiff's claim.

Notice and Authorization Claims

Again, the plaintiffs allege that USIS has violated § 1681b(b)(2) because it acquires TRFs and distributes DAC Reports without proper notice and consumer authorization.  Five of seven plaintiffs have testified that they have signed authorization forms authorizing their employer to release information in TRFs.  *Defendant's opposition brief*, p. 7 (citations to deposition testimony). The release forms cited by these plaintiffs address precisely the notice and authorization issues that are the subject of the plaintiffs' claims.  *Id*., Exhibits D, G, I, J.  Plaintiffs Williams and Bussone testified that such forms commonly are used by trucking companies.  *Id*., p. 7.

With regard to the notice and authorization claims, the receipt of a notice and the execution of an authorization, such as those evidenced in Exhibits D, G, I, and J, is a key fact that likely will make or break the claim.  The evidence in the record indicates that several of the named plaintiffs received notices and executed authorizations.  In this landscape, I cannot conclude that the named plaintiffs' notice and authorization claims are common, typical, and suitable for class-wide determination.  Rather, each plaintiffs' claim is based on widely variable facts that have a substantial effect on the viability of each plaintiff's claim.  This array of issues of material fact militates against resolution of this aspect of the plaintiffs' claim on a class-wide basis.

<u>Willful Failure to Comply</u>

The plaintiffs' claim that USIS willfully failed to comply with the requirements of the FCRA does not require proof that an inaccuracy caused the plaintiffs actual damages.  However, such a claim still requires the plaintiffs to prove that their reports contain an inaccuracy.  As noted above, proof of these issues among the named plaintiffs does not begin to approach any kind of uniformity. There is no indication that such uniformity would exist within the proposed class.

Similarly, the authorization and notice claims also would require proof that does not approach a uniformity that is tractable in a class action.  The evidence relevant to several of the named plaintiffs indicates that they executed authorizations and received notices relevant to their FCRA rights with some frequency.  Although I have not determined that the notices and authorizations in the record each comply with the requirements of the FCRA, the content of those notices and authorizations, and the circumstances under which they were executed, present issues that are at the heart of the plaintiffs' notice and authorization claims.  These facts are not well suited to

resolution on a class-wide basis.

## IV. CONCLUSION & ORDERS

The claims of the seven named individual plaintiffs present a varying array of factual issues, and concomitant legal issues, that are fundamental to each plaintiff's FCRA claims.  Having considered the record in this case, I find that the questions of fact and law affecting the individual plaintiffs predominate over questions of law or fact that are common to the members of the proposed class.  Under these circumstances, resolution of these claims as a class action would be unwieldy rather than efficient.  The plaintiffs' proposed class, therefore, does not satisfy the requirements of FED. R. CIV. P. 23(b)(2).  Based on the variations in the named plaintiffs' claims, I find also that the plaintiffs' claims do not satisfy the commonality and typicality requirements of FED. R. CIV. P.  23(a)(2) and (3).

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Plaintiffs' Revised Motion for Class Certification** [#48], filed May 12, 2005, is **DENIED**; and

2.  That on or before April 11, 2006, defendant USIS shall file a status report indicating whether they will withdraw any of their pending motions *in limine* in light of the denial of the plaintiff's motion for class certification.

Dated March 29, 2006, at Denver, Colorado.

**BY THE COURT:**

_____s/ Robert E. Blackburn_____
**Robert E. Blackburn**
**United States District Judge**