**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Case No. 04-cv-01384-REB-CBS

OWNER-OPERATOR INDEPENDENT DRIVER ASSOCIATION, INC.,
SHANE PAUL,
STEVEN BUSSONE,
DALE STEWART,
WILLIAM MECK,
WALT WILLIAMS,
JEFF MATHEWS,
RICHARD LEE SISEMORE, and
KENNETH HINZMAN,

      Plaintiffs,

v.

USIS COMMERCIAL SERVICES, INC., d/b/a DAC SERVICES,

      Defendant.

---

### ORDER CONCERNING DEFENDANT'S RULE 702 MOTIONS IN LIMINE

---

**Blackburn, J**

      This matter is before me on the following motions: 1) **Defendant's Motion in Limine to Preclude Report and Testimony of Glenn Beamer** [#85]; 2) **Defendant's Motion in Limine to Preclude Report and Testimony of Edward Schiappa** [#86]; 3) **Defendant's Motion in Limine to Preclude Report and Testimony of Michael Belzer** [#87]; 4) **Defendant's Motion in Limine to Preclude Report and Testimony of James Dulebohn** [#88]; and 5) **Defendant's Motion in Limine to Preclude Report and Testimony of Clyde Pearch** [#89], all filed on December 30, 2005.  The plaintiffs have filed a response to each motion, and the defendant has filed replies.  The defendant asks that the opinion testimony of each of these witnesses be stricken under Fed. R. Evid. 702.  The motions are granted in part and denied in part.

## I.  BACKGROUND

The complaint at issue is the plaintiffs' first amended complaint [#39], filed March 2, 2005 (Complaint).  The plaintiffs' claims I and IV have been dismissed, and the remaining claims, II and III, remain at issue.  The plaintiffs sought certification of a class of plaintiffs, but I entered an order [#140] denying the plaintiffs' motion for class certification.

Defendant, USIS Commercial Services, Inc., is an investigation and security services company that provides services to the transportation industry doing business under the name DAC Services.  Defendant gathers and disseminates information regarding truck drivers' employment histories.  This information is gathered from and disseminated to affiliated trucking companies.  USIS' reporting system helps trucking companies to comply with a federal regulatory requirement that the companies perform background checks on drivers before hiring them.  Trucking companies submit employment history information about their drivers to USIS by completing a Termination Record Form (TRF).  When a trucking company orders an employment history report on a particular driver, as part of the background check required by federal regulation, USIS compiles the TRF information it has received about that driver and produces a report called a DAC Report.  USIS designed the Termination Record Form, and created and maintains the system it uses to purchase TRFs from trucking companies, maintain the information in a database, and sell the information to trucking companies who are prospective employers of truck drivers.

The individual plaintiffs are truck drivers.  They allege that they "have been the subject of inaccurate consumer reports transmitted by carriers, without notice to them and without their permission, to USIS, followed by inaccurate consumer reports re-transmitted by USIS to other carriers."  *First Amended Complaint*, ¶ 36.

The plaintiffs allege that TRFs and DAC Reports are subject to the requirements of the Fair Credit Reporting Act (FCRA).  15 U.S.C. §§ 1681 - 1681x.  The plaintiffs allege that USIS has violated various requirements of the FCRA in its use and distribution of TRFs and DAC Reports.  The plaintiffs' allegations against USIS fall into two general categories.  First, the FCRA requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the [consumer report] relates."  15 U.S.C. § 1681e(b).  The plaintiffs allege that TRFs and DAC reports routinely are inaccurate, and that USIS has failed to follow reasonable procedures to assure accuracy in these reports.  I will refer to this first category as the plaintiffs' accuracy claims.

Second, the FCRA requires a consumer reporting agency to obtain a consumer's authorization before procuring a consumer report for employment purposes, or causing a consumer report to be procured for such purposes.  15 U.S.C. § 1681b(b)(2).  This section also requires notice and disclosure to a consumer in these circumstances.  The plaintiffs allege that USIS does not comply with these requirements when is acquires TRFs and when it sells DAC Reports.  I will refer to this second category as the plaintiffs' notice and disclosure claims.

To establish their claim that USIS negligently failed to comply with the accuracy requirements of the FCRA, the plaintiffs must prove i) USIS failed to follow reasonable procedures to assure the accuracy of its report; ii) the report in question was, in fact, inaccurate; iii) the plaintiff suffered an injury; and iv) USIS's failure to use reasonable procedures caused the plaintiff's injury.  *Cassara v. DAC Services*, 276 F.3d 1210, 1217 (10th Cir. 2002).  To establish their claim that USIS negligently failed to satisfy the notice and disclosure requirements of the FCRA, the plaintiffs must prove i) the required notice or

disclosure was inadequate; ii) the plaintiff was injured; and iii) that the injury was caused by the inadequate notice.

To establish that USIS willfully failed to comply with the FCRA the plaintiffs must show that USIS knowingly and intentionally failed to comply with the FCRA "in conscious disregard for the rights of others." **Stevenson v. TRW, Inc**., 987 F.2d 288, 294 - 295 (5th Cir. 1993) (citation omitted).  Under § 1681n, a plaintiff who has proven that the defendant wilfully failed to comply with the FCRA may recover statutory and punitive damages without proof of actual damages.

## II. RULE 702 STANDARDS

The defendant argues that the opinion testimony the plaintiff seeks to introduce through the six expert witnesses disclosed by the plaintiffs is not admissible under FED. R. EVID. 702.  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if
> (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 imposes two threshold requirements.  First, the witness must be qualified by specialized knowledge, skill, experience, training or education to testify on the subject at issue.  Second, the testimony must concern "scientific, technical, or other specialized knowledge that will assist the trier of fact."  *Id.*

The standards outlined in Rule 702 implicate the standards for admission of opinion testimony stated in the so-called **Daubert** trilogy.  **Daubert v. Merrell Dow Pharm.**, 509 U.S. 579 (1993); **Gen. Elec. Co. v. Joiner**, 522 U.S. 136 (1997); **Kumho Tire Co., Ltd. v. Carmichael**, 526 U.S. 137 (1999).  The court's application of the standards of Rule 702

and the related cases is "a flexible and commonsense undertaking in which the trial judge is granted broad latitude in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable." *Smith v. Ingersoll-Rand Co.*, 214 F.3d. 1235, 1243 (10th Cir. 2000) (internal quotation and citations omitted).

A reliability analysis applies to all aspects of the expert's testimony, including the facts underlying the opinion, the methodology used, and the link between the facts and the conclusion drawn. *Heller v. Shaw Indus.*, 167 F.3d 146, 155 (3d Cir.1999). Consequently, the court must make a practical, flexible analysis of the reliability of the testimony, considering relevant factors and the circumstances of the case. *See, e.g., Kumho Tire*, 526 U.S. at 149-52; *Heller*, 167 F.3d at 155.  Rule 702 requires that opinion testimony be the product of reliable principles and methods, and that an opinion witness has applied those principles and methods reliably to the facts of the case. Generally, four factors are considered relevant in determining whether a proffer of expert testimony is reasonably reliable.  The court must determine whether the expert testimony 1) can be and has been tested; 2) has been subject to peer review and publication; 3) has a known or potential rate for error; and 4) has attained general acceptance in the relevant scientific community.

When evaluating the admissibility of opinion testimony, the court must perform a "gatekeeper" function by ensuring that only relevant and reasonably reliable opinion testimony is admitted as evidence.  In performing this function, I must ensure that I have sufficient evidence to determine the relevance and the reliability of the opinion testimony in question.  *See, e.g., Dodge v. Cotter*, 328 F.3d 1212, 1228 (10th Cir. 2003).  I have fully reviewed the motions, responses and replies.  I find that the issues raised by and inherent to the motions are fully briefed, obviating the necessity for a hearing.  The parties'

submissions provide sufficient evidence and argument to determine the admissibility of the opinion testimony challenged by USIS.

### III. GLENN BEAMER

Dr. Glenn Beamer is a political science professor at Rutgers University.  The plaintiffs retained Dr. Beamer to support their claims that a) DAC reports are inaccurate; and b) DAC failed to follow reasonable procedures to assure maximum possible accuracy. *Plaintiffs' response* [#107], filed January 19, 2006, p. 1.  Dr. Beamer has expressed opinions about the measurement and content validity of the TRF and DAC's guide to the TRF.  Content validity refers to how clearly individual survey measures relate to topics that are relevant to the research subject.  Measurement validity looks to the extent to which an instrument or query accurately and fairly represents the frequency of an event or the extent of a characteristic.  Additionally, measurement validity concerns whether a survey provides for the full range of possible outcomes.

The plaintiffs indicate that Dr. Beamer "concluded that each of the terms in the Work Record section of the TRF lacks measurement validity or content validity, or both, and, therefore, were all invalid."  *Plaintiffs' response to motion in limine* [#107], filed January 19, 2006, p. 6.  After essentially analyzing the TRF as a survey tool, Dr. Beamer concludes that the TRF produces records and representations of drivers' characters that are unreliable.  *DAC's motion in limine* [#85], filed December 30, 2005, Exhibit A (Beamer report), pp. 2-4.  He concludes also that the "work record descriptors and rehire eligibility codes [in the TRF] are unreliable measures of specific dimensions [of] drivers' employment histories and characteristics."  *Id*.  DAC challenges the admissibility of Dr. Beamer's opinion testimony by arguing that 1) the testimony will not assist the jury; 2) that Dr. Beamer is not qualified to give the proffered opinions; and 3) that Dr. Beamer's

opinions are not based on reliable principles applied reliably.

Need for expert testimony - One of the key questions in this case is whether DAC

acted reasonably in designing a reporting system that will generate accurate reports.  I

conclude that Dr. Beamer's opinion testimony about survey design and accuracy is

relevant to the question of whether DAC used reasonable procedures to ensure the

accuracy of its reports.  Dr. Beamer has expertise in polling or survey methods that is

beyond the ken of a typical juror.  Thus, his testimony may be helpful to a jury examining

this issue.

I note, however, that Dr. Beamer's report and his opinion that TRFs and DAC

reports are inaccurate does not address alleged inaccuracies in the specific TRFs or DAC

reports of any of the individual plaintiffs.  Dr. Beamer does not mention any of the

individual plaintiffs in his report.  Rather, Dr. Beamer discusses the content of TRFs

generally, and how these forms and other aspects of USIS' system allegedly produce

inaccuracies in DAC reports.  Dr. Beamer does not opine that the plaintiffs' TRFs or DAC

reports are inaccurate, or that all such reports are inaccurate.

To establish an inaccuracy claim, each plaintiff must prove that a TRF or DAC

report concerning that plaintiff includes at least one inaccurate statement.  Dr. Beamer's

opinions on the general level of accuracy that he says occurs through the use of TRF

forms is, at best, only obliquely related to the accuracy of a particular plaintiff's TRF or

DAC report.  Dr. Beamer's opinion that the TRF report will lead to some level of inaccuracy

in the DAC reporting system cannot properly be used to prove that a particular report

about a particular plaintiff is inaccurate.  To the extent this opinion might be seen as

tending to show that a particular plaintiff's TRF or DAC report is inaccurate, I conclude that

Dr. Beamer's testimony is not admissible under Rule 702(1) for the lack of sufficient facts

and data.   I also conclude that for the purpose of proving the inaccuracy of a particular

plaintiff's DAC report the probative value of this opinion testimony is substantially

outweighed by the dangers enumerated in Fed. R. Evid. 403.

Qualifications & reasonable procedures - Again, Dr. Beamer has expertise in polling

or survey methods that is beyond the ken of a typical juror.  DAC's attacks on Dr.

Beamer's qualifications, his gathering of facts, the reliability of his methods and principles,

and his reliable application of those methods and principles, all go to the weight that

should be accorded to his testimony.  DAC has not demonstrated that the basis of Dr.

Beamer's opinion testimony is so unreliable in these areas that the testimony should not

be admitted.  Rather, these areas are ripe for cross examination.

In short, I conclude that Dr. Beamer's opinion testimony is not admissible to prove

that the DAC reports of any of the plaintiffs was inaccurate.  However, his opinion

testimony is admissible to show that DAC did not use reasonable procedures to ensure

that its reporting system produces accurate reports.

## IV.  EDWARD SCHIAPPA

Dr. Edward Schiappa is a professor in the Communications Studies Department of

the University of Minnesota.  The plaintiffs retained Dr. Schiappa to opine about the

accuracy of the 17 work record descriptors in the TRF.  Dr. Schiappa's opinion, as

summarized by the plaintiffs, is that the 17 work record descriptors used in DAC's TRF are

"circular, vague, ambiguous, or open to abuse.  They fail to facilitate denotative conformity

or connotative predictability . . . [And they] fail to meet the four criteria of good definitional

practices . . . .   Accurate interpretation of data generated by TRF reports is impossible.

The problems are systemic to the design of the form and its definitional glossary."

*Schiappa report*, Exhibit A to DAC's motion in limine [#86], filed December 30, 2005 (as

8

quoted in plaintiffs' response [#105], p. 4).

DAC challenges Schiappa's opinion testimony on three bases: 1) need for expert opinion testimony, including risk of confusion; 2) qualifications; and 3) reliability of methodology.  While DAC does point to significant flaws in these areas, I conclude that these flaws do render Schiappa's opinions inadmissible.  Rather, these flaws all go to the weight that should be accorded to Dr. Schiappa's opinions.  These areas are ripe for critical cross examination by DAC.

Need for expert opinion testimony - DAC argues that Dr. Schiappa's opinions are not admissible as opinion testimony because they address matters that do not require specialized knowledge.  I disagree.  Dr. Schiappa's specialized knowledge about language, communication, the creation of accurate definitions, and the means by which definitional accuracy can be judged transcends the knowledge of the ordinary lay person. Where relevant, such knowledge could be helpful to the jury.

DAC argues also that Dr. Schiappa's opinions should be excluded because 1) he does not have any direct or indirect knowledge about whether any trucking companies using the TRF or related information actually misunderstood or misused the 17 terms used in the TRF; and 2) Schiappa admits that the inaccurate communications about which he opines could be helpful or prejudicial to drivers.  As a result, DAC argues, Dr. Schiappa's opinions are more likely to be confusing than to be helpful.  I conclude that these flaws do not make Dr. Schiappa's opinions so unreliable or confusing that they are inadmissible. These areas affect the weight to be accorded Dr. Schiappa's opinions, and these areas also are ripe for cross examination.

Qualifications - I conclude that Dr. Schiappa is sufficiently qualified by knowledge, skill, experience, and training to render opinions about language, communication, the

creation of accurate definitions, and the means by which definitional accuracy can be judged.  Again, his knowledge and training extend well beyond the purview of knowledge of the ordinary lay person in these areas.  On the current record, Dr. Schiappa's stated opinions do not so exceed the bounds of his expertise that those opinions are rendered inadmissible.  To the extent Dr. Schiappa may test or exceed the bounds of his expertise, that issue also goes to the weight to be accorded his opinions.  Again, this topic is proper for cross examination or the presentation of competing evidence.

Reliable methodology - DAC argues that Dr. Schiappa's opinions are not based on sufficient data, and are not the product of reliable principle applied reliably.  DAC notes that Dr. Schiappa examined various DAC forms, read certain deposition testimony, read the Fair Credit Reporting Act, and other documents.  He then developed his opinions. DAC notes that Schiappa did not survey any motor carriers or drivers to determine whether they actually understood or applied the definitions used in the TRF accurately or inaccurately.

Dr. Schiappa's opinions about language, communication, the creation of accurate definitions, and the means by which definitional accuracy can be judged enjoys a sufficient basis in the documents he examined.  Further, Dr. Schiappa's report indicates that he applied the principles of language, communication, and definitional practice outlined in his report to these documents in forming his opinion.  Nothing in his report indicates that his application of these principles was unreliable.  The fact that Dr. Schiappa does not have survey evidence or other evidence to confirm his opinions about the DAC's use of language and definitions exposes the limits of his opinions, but it does not render his opinions inadmissible.

Admissibility to prove inaccuracy of particular reports - Like Dr. Beamer, Dr.

Schiappa did not examine the DAC reports of any of the plaintiffs.  Dr. Schiappa's opinions on the general level of accuracy achieved by the use of the terms used in the TRF forms generally is, at best, only obliquely related to the accuracy of a particular plaintiff's TRF or DAC report.  Dr. Schiappa's opinion that the TRF report will lead to some level of inaccuracy in the DAC reporting system cannot properly or logically be used to prove that a particular report about a particular plaintiff is inaccurate.  To the extent this opinion might be seen as tending to show that a particular plaintiff's TRF or DAC report is inaccurate, I conclude that Dr. Schiappa's testimony is not admissible under Rule 702(1) for the lack of sufficient facts and data.   I also conclude that for the purpose of proving the inaccuracy of a particular plaintiff's DAC report the probative value of this opinion testimony is substantially outweighed by the dangers enumerated in Fed. R. Evid. 403.

In short, I conclude that Dr. Schiappa's opinion testimony is not admissible to prove that the DAC reports of any of the plaintiffs was inaccurate.  However, his opinion testimony is admissible to show that DAC did not use reasonable procedures to ensure that its reports are accurate.

## V.  MICHAEL BELZER

Dr. Michael Belzer is a professor of urban and labor studies and Wayne State University.  The plaintiffs retained Dr. Belzer to examine the damages suffered by drivers who were characterized by six specific work record descriptors used in the TRF. According to the plaintiffs, Dr. Belzer says his statistical analysis demonstrates that, "on average, drivers who were characterized by [one of six] certain work record descriptors had longer job searches."  *Plaintiffs' response to motion in limine* [#106], filed January 19, 2006, p. 5.  He estimated the average length of time such a driver would search for new employment following the DAC report containing one of the six descriptors.

11

DAC challenges Dr. Belzer's proposed opinion testimony on a variety of bases.  I conclude that this opinion testimony is not admissible under 702(1) for lack of sufficient facts and data.  Dr. Belzer's opinions are not based on facts and data about the harm allegedly suffered by the individual plaintiffs.  Dr. Belzer gives no opinion about the damages suffered by any of the plaintiffs based on an allegedly inaccurate DAC report concerning one of the plaintiffs.  Rather, he presents a statistical analysis of the average harm that would be suffered by a driver whose DAC report includes one of six work record descriptors.  Even assuming that Dr. Belzer's analysis has an adequate factual basis and is based on reliable principles reliably applied, such an analysis is of little help in determining whether any of the plaintiffs suffered harm in his particular case.  In order to prove their claims, each of the plaintiffs must prove that they suffered harm that was caused by an inaccuracy in their DAC report.  Dr. Belzer's general analysis of average harms does little to inform the jury on the particular harms allegedly suffered by each of the plaintiffs.  Dr. Belzer simply does not address these particular harms.  Thus, Dr. Belzer's general analysis will not inform the jury on the key issue of the plaintiffs' individual damages, and his analysis may well confuse and mislead the jury on this issue.

In short, Dr. Belzer's opinion testimony is not admissible under Rule 702(1) for lack of sufficient facts and data.   I also conclude that for the purpose of proving the damages allegedly suffered by the plaintiffs the probative value of this opinion testimony is substantially outweighed by the dangers enumerated in Fed. R. Evid. 403.

## VI.  JAMES DULEBOHN

James Dulebohn is an associate professor of human resource management at Michigan State University.  Like Dr. Beamer, Dr. Dulebohn examined the TRF to determine its validity as a tool for conveying information about employees, as a database

system, and as a survey. *Plaintiffs' response to motion in limine* [#100], filed January 19, 2006, pp. 4-5.  As summarized by the plaintiffs, Dr. Dulebohn opines that the TRF "does not meet accepted standards of HRM (human resources management), HRIS (human resource information systems), database design, and survey design." *Id.*, p. 5.  He says that many of the items on the TRF "allow for some interpretation and therefore do not meet the minimum FCRA requirements for developing 'genuine common understanding and agreement . . . .'" *Id.*  Specifically, he criticizes the omission of the use of memo fields to provide explanation of undefined criteria, the ordering of items, the lack of detail and completeness of description, and the presence of "inappropriate questions." *Id.*

DAC challenges the admissibility of Dr. Dulebohn's opinion testimony on three bases: 1) that the testimony will not assist the jury; 2) that Dr. Dulebohn is not qualified to give the proffered opinions; and 3) that Dr. Dulebohn's opinions are not based on reliable methodologies.

Need for expert opinion testimony - DAC argues that Dr. Dulebohn's opinions are not admissible as opinion testimony because they address matters that do not require specialized knowledge.  I disagree.  Dr. Dulebohn's specialized knowledge about human resources management and the collection and management of human resources data exceeds the knowledge of the ordinary lay person.  Where relevant, such knowledge could be helpful to the jury.  Here, his opinion testimony could be helpful to the jury in determining whether DAC acted reasonably in designing a reporting system that will generate accurate reports.  I note, however, that Dr. Dulebohn did nothing to examine the plaintiffs' individual DAC reports to determine whether those particular reports contained inaccuracies.  As with Drs. Beamer and Schiappa, I conclude that Dr. Dulebohn's opinion testimony is not admissible to prove that the DAC reports of any of the plaintiffs was

inaccurate.

Qualifications & reasonable procedures - Again, I conclude that Dr. Dulebohn's opinion testimony about the validity of the TRF as a tool for conveying information about employees, as a database system, and as a survey concerning information relevant to human resources operations is relevant to the question of whether DAC used reasonable procedures to ensure the accuracy of its reports.   Dr. Dulebohn has expertise in these areas that is beyond the ken of a typical juror.  DAC's attacks on Dr. Dulebohn's qualifications and the reliability of his methodologies go to the weight that should be accorded to his testimony, and not to its admissibility.  These areas, among others, are ripe for vigorous cross examination.

Finally, I note that Dr. Dulebohn appears to state an opinion about a legal issue when he opines that the TRF does not "meet the minimum FCRA requirements for developing 'genuine common understanding and agreement . . . .'" *Id.*  Dr. Dulebohn may not properly give opinion testimony concerning legal conclusions.

In short, I conclude that Dr. Dulebohn's opinion testimony is not admissible to prove that the DAC reports of any of the plaintiffs was inaccurate.  Further, to the extent the plaintiff seeks to have Dr. Dulebohn give opinion testimony on legal issues, his testimony is inadmissible.  However, his opinion testimony is admissible to show that DAC did not use reasonable procedures to ensure that its reports are accurate.

## VII.  CLYDE PEARCH

The plaintiffs present Clyde Pearch as an expert in business management systems. *Plaintiffs' response to motion in limine* [#98], filed January 19, 2006, p. 12.  The plaintiffs say he is offered to give an opinion concerning DAC's business processes, and his opinion is limited to the issue of whether DAC failed to follow reasonable procedures to

14

ensure the accuracy of its reports.  *Id*., p. 5.  In essence, Pearch opines that DAC acted

unreasonably in this respect because a) it lacks a formal process to independently review

and assess the satisfaction of customers, interested parties, and users of DAC's reports;

b) it lacks processes to formally capture all customer feedback; and 3) it lacks formal

processes to independently assess the accuracy and application of the database

information.  *Id*., pp. 5-6.  DAC challenges the admissibility of Pearch's opinion testimony

on three bases: 1) Pearch is not qualified; 2) Pearch's testimony will not assist the jury;

and 3) Pearch's opinions are not based on reliable methodologies.

Qualifications - I conclude that Pearch  is sufficiently qualified by knowledge, skill,

experience, and training to render opinions about business management systems.  His

knowledge and training in this area extend well beyond the purview of knowledge of the

ordinary lay person.

Need for expert opinion testimony - DAC argues that Pearch's opinions are not

admissible as opinion testimony because his opinions do not fit the issues in the case.  I

conclude that Pearch's opinions about the application of business systems to maintain

accuracy in business operations are relevant to the issue on which his opinions will be

offered, and they may be helpful to the jury.

Reliable methodology - DAC argues that Pearch's opinions are not based on

sufficient data, and are not the product of reliable principle applied reliably.  Pearch

examined various documents that outline DAC's operating procedures, and other

documents relevant to this case.  Pearch's opinions about business management systems

enjoy a sufficient basis in the documents he examined.  Further, Pearch's report indicates

that he applied the principles of business management systems to the information he

reviewed about DAC.  Nothing in his report indicates that his application of these

principles was unreliable.  The fact that Pearch does not have survey evidence or other evidence to confirm his opinions about the DAC's business systems may expose the limits of his opinions, but it does not render his opinions inadmissible.

On the current record, I conclude that Pearch's opinions satisfy the requirements of Rule 702 and do not implicate the dangers or considerations of Rule 403.

### VIII.  CONCLUSION

Having fully considered the evidence, argument, and legal authority presented by the parties, I find that the opinion testimony of Glenn Beamer, Edward Schiappa, James Dulebohn, and Clyde Pearch is admissible on the issue of whether DAC failed to follow reasonable procedures to ensure the accuracy of its reports.  However, this opinion testimony is not admissible to prove that the DAC reports of any of the plaintiffs was inaccurate.  Further, Dr. Dulebohn's testimony is not admissible to the extent he may opine about legal issues.  I find and conclude also that the opinion testimony of Michael Belzer is not admissible.  To the extent DAC has raised objections not specifically addressed in this order, and based on the current record in this case, I find and conclude that those objections do not render the opinions at issue inadmissible under Fed. R. Evid. 702.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the **Defendant's Motion in Limine to Preclude Report and Testimony of Glenn Beamer** [#85], filed December 30, 2005, is **GRANTED** to the extent the plaintiffs seek to introduce Dr. Beamer's testimony to prove that the DAC reports of any of the plaintiffs was inaccurate;

2.  That the **Defendant's Motion in Limine to Preclude Report and Testimony of Glenn Beamer** [#85], filed December 30, 2005, otherwise is **DENIED**;

3.  That the **Defendant's Motion in Limine to Preclude Report and Testimony of Edward Schiappa** [#86], filed December 30, 2005, is **GRANTED** to the extent the plaintiffs seek to introduce Dr. Schiappa's testimony to prove that the DAC reports of any of the plaintiffs was inaccurate;

4.  That the **Defendant's Motion in Limine to Preclude Report and Testimony of Edward Schiappa** [#86], filed December 30, 2005, otherwise is **DENIED**;

5.  That the **Defendant's Motion in Limine to Preclude Report and Testimony of Michael Belzer** [#87], filed December 30, 2005, is **GRANTED**;

6.  That the **Defendant's Motion in Limine to Preclude Report and Testimony of James Dulebohn** [#88], filed December 30, 2005, is **GRANTED** to the extent the plaintiffs seek to introduce Dr. Dulebohn's testimony concerning his opinion about a legal issue or to prove that the DAC reports of any of the plaintiffs was inaccurate;

7.  That the **Defendant's Motion in Limine to Preclude Report and Testimony of James Dulebohn** [#88], filed December 30, 2005, otherwise is **DENIED**;

8.  That the **Defendant's Motion in Limine to Preclude Report and Testimony of Clyde Pearch** [#89], filed December 30, 2005, is **DENIED**.

Dated July 28, 2006, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge